John Wachtel Corporation v. Commissioner.
John Wachtel Corp. v. Commissioner
Docket No. 4764.
United States Tax Court
1945 Tax Ct. Memo LEXIS 131; 4 T.C.M. (CCH) 768; T.C.M. (RIA) 45250; June 29, 1945
James E. Bingham, Esq., and Mark M. Covert, C.P.A., for the petitioner. Lester M. Ponder, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined the following deficiencies in tax: Declared
Value Excess-
Year
Income Tax
Profits Tax
1938
$5,952.07
$3,876.82
1939
4,660.14
2,739.42
The sole question is whether he erred in determining that an alleged partnership composed of three brothers was without substance, was not recognizable for Federal tax purposes, and therefore that all of the net income from a business conducted by the partnership should be added to the income of a corporation in which the partners owned a stock interest of 60 percentum. Findings of Fact Petitioner (now John Wachtel Corporation) *132 was organized as a corporation under the laws of the State of Indiana on March 20, 1924, under the name of John Wachtel Company. Its returns for the taxable years were filed with the collector of internal revenue for the district of Indiana. It has, and since its organization has had, an authorized capital of $35,000, consisting of 350 shares of common stock having a par value of $100 per share. All authorized shares were issued for the assets of a reduction plant formerly operated by John Wachtel as an individual. The stock of the corporation was originally issued as follows: John Wachtel, father
175 shares
Henry Wachtel, son
35 shares
Joseph Wachtel, son
35 shares
Jacob Wachtel, son
35 shares
Kate Beyersdorfer, daughter
35 shares
Anna Loschky, daughter
35 shares
On March 16, 1925, John Wachtel transferred to each of his children 34 shares of the stock which had been issued to him. Thereafter he owned five shares and each of his children owned sixty-nine shares. On October 23, 1932, John Wachtel died, being survived by the five children. On June 8, 1937, the five shares standing in the name of John Wachtel were issued, one to each of the five children. *133 Thereafter and during the taxable years each of the five children owned seventy shares. The purposes for which the corporation was organized, as set out in its charter, were: "To manufacture fertilizer of various kinds and to operate a plant for the rendering of tallow and grease. It proposed (sic) to collect fats, bones, dead animals and render the same in order to extract therefrom tallow and grease and also to manufacture fertilizers of various kinds therefrom and it also proposes to sell and dispose of such products and to handle and deal in articles of merchandise usually connected with the business known as a rendering plant and fertilizer factory." On March 19, 1938, the corporate name was changed to John Wachtel Corporation. The articles of reorganization state the purposes for which it is reorganized to be: "The manufacture of fertilizer of various kinds and to render tallow and grease; to sell and dispose of such products and such articles of merchandise as are usually connected with the business known as a rendering plant and fertilizer factory; to manufacture and sell any and all other products; and to exercise any and all of the general powers permitted by The *134 Indiana General Corporation Act." The Indiana General Corporation Act permits Indiana corporations inter alia to "acquire, own, hold, lease * * * convey or otherwise dispose of property * * *." The three brothers, Henry, Joseph, and Jacob Wachtel, were actively engaged in the management and operation of the corporate business prior to January 1, 1938. The two sisters, Kate Beyersdorfer and Anna Loshky, were housewives, inexperienced in business and they took no active part in the fertilizing and rendering business either before or after that date. Prior to and during the taxable years the officers of the corporation were Henry Wachtel, president; Joseph Wachtel, treasurer; Jacob Wachtel, secretary; and Kate Beyersdorfer and Anna Loschky, vice-presidents. During the year 1937 the corporation encountered damaging competition from a large Chicago concern, which had rendering plants throughout the United States, and sustained an operating loss. The Chicago company paid higher prices for products needed by petitioner in its business than petitioner could pay and operate at a profit. This competition was terminated in 1941 as a result of proceedings before the Federal Trade Commission. *135 Prior to 1938 the three brothers had been advancing money to petitioner to meet its payrolls and, because its cash position was not good, they had not withdrawn all of the salaries to which they were entitled for their services. Another difficulty facing the corporation at that time was that its machinery and equipment were worn and inadequate and it did not have sufficient funds to purchase new or to repair the old. Faced with these conditions, the five stockholders of petitioner, in the latter part of 1937, discussed the advisability of transferring the operating end of the business to a partnership to be composed of the three brothers. The brothers did not wish their sisters to risk losing what they had in the corporation, nor did they desire to urge them to put money into what they then deemed to be a hazardous enterprise in order to enable it to continue. On January 1, 1938, the board of directors, composed of the three brothers and two sisters, adopted resolutions providing that the corporation be reorganized and its name changed to "John Wachtel Corporation." The articles of reorganization were approved by the stockholders on January 11, 1938. Also on January 1, 1938, a *136 partnership agreement was entered into between the three brothers. This agreement provided for the formation of a partnership to conduct, under the name of "John Wachtel Company," the business formerly conducted by the corporation and such additional business enterprises as might be agreed by the corporation and such additional business enterprises as might be agreed upon by the partners; that each partner should own a one-third interest in the partnership; and that in the event further contributions of capital were necessary, each partner would contribute one-third of the amount required. As of January 1, 1938, the corporation owed Henry, Joseph, and Jacob Wachtel on account of money advanced to it for payrolls and other corporate purposes the aggregate sum of approximately $64,000. On March 19, 1938, the board of directors of petitioner held a meeting at which all directors (who were also its sole stockholders) were present. At this meeting the change of the corporate name from John Wachtel Company to John Wachtel Corporation was approved. The minutes of the meeting state that Henry, Joseph, and Jacob Wachtel were the persons actively engaged in managing the affairs of the corporation; *137 that it was the unanimous wish of all the stockholders that the business theretofore conducted by the corporation be transferred to and operated by Henry, Joseph and Jacob Wachtel as a partnership on payment by the partnership to the corporation of a proper and reasonable annual rental; and that the current assets of the corporation should be sold to the partnership on payment by it, or on the incurring by it of an obligation for the payment, of money in an amount equal to the total book value of the current assets so sold and transferred. The petitioner's president announced that delivery of the current assets had been made; that the partnership had been charged on the books of the corporation with the amount of $52,024.49, the total book value shown; and that a lease had been executed in behalf of petitioner by its president and secretary and by the three members of the partnership which "had been delivered and is now a document binding on all of the parties thereto." This action of petitioner's officers was ratified and approved by the board of directors. The assets purchased by the partnership and the time and manner of payment therefor were as follows: Assets so purchased and taken over at January 1, 1938: Cash
$3,063.93
Bonds
954.83
Shares in Railroadmen's Building and Savings Association
4,624.74
Accounts receivable (Customers)
7,295.27
Inventory (Merchandise)
30,985.80
Franchise-Plainfield Rendering Co.
337.50
Supplies
307.00
Unexpired insurance
783.19
Prepaid taxes (Store license)
3.50
Automobiles and trucks at cost
$6,626.73
Less depreciation previously taken for tax purpose
2,958.00
3,668.73
$52,024.49
*138 Time and manner of payment: Accounts payable of the corporation assumed by the partner-
ship at January 1, 1938
$ 2,158.58
Charged to the individual partners on the books of the corpo-
ration at January 1, 1938: Henry Wachtel
16,621.97
Joseph Wachtel
16,621.97
Jacob Wachtel
16,621.97
$52,024.49
The other physical assets of petitioner, consisting of its manufacturing plant, machinery, all other chattels, and "the entire going business operated upon the real estate aforesaid" were covered by the terms of the lease "made and entered into as of the first day of January, 1938." The lease was for the calendar year 1938 "and from year to year thereafter" until terminated by either party upon written notice. It provided for an annual rental to be paid by the partnership to petitioner equal to 3 percent of the depreciated value of all of the property described in the lease, "which value shall be that carried upon the books of the lessor as at the close of business on December 31 of each year." In addition the partnership was to pay all taxes upon the leased property, all expenses of keeping it in repair, and all premiums for policies of insurance "carried *139 by the lessor upon such property." The lease further provided that the property leased should "be used by the lessee solely for the purpose of carrying on such form of business as has heretofore been conducted by the lesson." On March 26, 1938, the partnership filed in the office of the Clerk of the Circuit Court of Marion County, Indiana, a certificate stating that its three members were engaged in the "Manufacture of fertilizer and rendering" under the name of "John Wachtel Company." The same personnel continued to operate the rendering plant after January 1, 1938, as had been employed for that purpose prior thereto, and their duties remained the same. The partnership and the corporation at all times kept and maintained separate bank accounts, books of account, and records. Since January 1, 1938, the corporation has had no employees. Workmen's compensation insurance has been carried by the partnership for its employees, and it has paid social security and unemployment compensation taxes as they became due. The partnership has expanded the business and acquired new territory. In 1941, it purchased the assets and business of Lawrence H. Graner, of Terre Haute, Ind.
In the computation *140 of rental under the lease the partnership was charged each year with the depreciation allowable for tax purposes upon the property leased, plus taxes and 3 percentum upon the depreciated value of the property. The amounts paid by the partnership were: $19,683.44 for 1938, $20,947.98 for 1939 and $22,612.92 for 1940, all of which were included in petitioner's gross income. The computations were made by an accountant who was informed it was the intention of the parties that petitioner should receive net three percent on its investment in the property leased. Petitioner paid dividends in the amounts of $11,250 and $10,000 in the years 1938 and 1939, respectively. No dividends were paid by it in 1940. The dividends for 1938 and 1939 were charged on the books of the partnership to an account capitioned "dividends." This account was closed against the account of John Wachtel Corporation on the books of the partnership. In 1938, the amount of $1,847.05 was credited to surplus of the corporation; in 1939, $1,844.55; and in 1940 $2,188.01. The amounts represented the net profits of the petitioner for the respective years as shown by its books. Each of these amounts was reported in petitioner's *141 Federal income tax returns as its net income for the respective years. The corporation income and excess-profits tax returns of petitioner for the years 1938 and 1939 were erroneously filed under the name of "John Wachtel Company." The information returns filed by the partnership for the years 1938 and 1939 showed the name of the reporting organization to be "John Wachtel Company." The partnership returns for the years 1938, 1939 and 1940 disclose the following: 1938
1939
1940
Gross receipts from business
$308,865.15
$450,126.71
$372,154.44
Less cost of goods sold
223,094.72
358,189.24
324,178.75
Gross profit from business
85,770.43
91,937.47
47,975.69
Total income
86,470.29
92,432.76
48,385.99
Total deductions
43,111.20
53,607.59
52,883.78
Ordinary net income (loss)
43,259.09
38,825.17
( 4,497.79)
The ordinary net income (or loss) for each year was shown to be distributable (or chargable) to Henry, Jacob and Joseph Wachtel, one-third to each. In the year 1938 the partnership advanced to the corporation $11,250, in 1939 $10,000, and in 1940 $20,000. The members of the partnership, from time to time, contributed to the partnership *142 capital account. All income from the operation of the reduction and rendering business was reported by the partnership after January 1, 1938, and the members of the partnership paid all the taxes, both Federal and state, including State Gross Income Tax. In his determination of the deficiencies the Commissioner made no adjustment to the gross income or deductions reported on the partnership returns. He determined, however, that the net income reported - $43,359.09 for the year 1938 and $38,825.17 for the year 1939 - was includible in the taxable net income of petitioner for the following reasons: "It is determined that the purported arrangement between you and an alleged partnership composed of Henry, Jacob and Joseph Wachtel is without substance and is not recognizable for Federal tax purposes. Accordingly, the net income of said alleged partnership for the year 1938 [and 1939] is includible in your net income as adjusted herein. "In the alternative, if such alleged partnership is recognizable for Federal tax purposes, it is determined that the gross income and deductions attributable to the business carried on by the partnership known as John Wachtel Company is includible *143 in your income and allowable as deductions under the provisions of section 45 of the Revenue Act of 1938 [and Internal Revenue Code]." Opinion Respondent contends that the various steps taken by the petitioner and the three brothers in forming the partnership, transferring its business and current assets to it, and executing a lease providing for the rental of the corporation's physical assets, were matters of form only; that, in reality, no substantial change was effected in the conduct of the rendering business; that the acts of the parties lacked business purpose and were taken for the sole purpose of distorting the normal tax result of the operations of the petitioner; and that, therefore, the income from the rendering business for the years 1938 and 1939 should have been reported by the petitioner. In the alternative, he insists that, if the partnership is recognizable for Federal tax purposes, then the gross income and deductions attributable to its business operations are allocable to petitioner in order to prevent evasion of taxes and clearly to reflect the income of the business. The reasons given by the respondent in support of his determination may be summarized *144 as follows: The partnership form adopted "is a sham and unreal" and "is a bald and mischievous fiction." The three brothers, as owners of 60 percent of petitioner's stock, were in control of the corporation and "could operate the business or dispose of it at any time and in any manner that they might desire." The partnership and lease agreements were prepared as a device for siphoning the earnings of the petitioner out of its treasury and into the partnership. There was no separation in reality between the affairs of the corporation and those of the partnership. Petitioner retained the corporate power to conduct a rendering business. After January 1, 1938, the business was operated by the same personnel and in the same manner as theretofore. The three brothers gave consideration to the reduction of taxes by means of the partnership and lease agreements. Petitioner paid no dividends in 1940 when the partnership reported a net loss, and paid dividends in 1938 and 1939 when it showed a profit from operation. The Federal income tax returns of both the corporation and the partnership for the taxable years were filed under the name of "John Wachtel Company." The provisions of the lease as *145 to rental payments were not followed. The evidence that the partnership was not a sham or unreal is convincing. It is always difficult to rationalize a fact question or to assign to any particular evidence the precise weight which has been given to it. A brief resume of some of the evidence, however, may be helpful. At the time the partnership was formed the three Wachtel men and their two sisters owned all of petitioner's stock. The precise age of the parties at that time has not been shown; but they all appeared to be 50 years of age or older. The corporation, operated entirely by the men, had just sustained a substantial loss from its operation in 1937 and was hampered by the competition of a large concern which was purchasing products needed by petitioner in its business at prices it could not pay and operate at a profit. At the end of 1937 the corporation owed the three brothers the aggregate amount of $63,272.60 on account of advances which they had made to it to meet payrolls and other corporate obligations, including reasonable salaries to them as its officers. The outlook of the corporation on that date was not promising. The prospects were that additional capital contributions *146 would be necessary. The three brothers did not wish to ask their two sisters to put additional money into the business or "to run the risk of losing what they had in it." Faced with these conditions the stockholders and directors of petitioner agreed upon a plan under which the current assets and business of the corporation were to be transferred to a partnership, composed of the three brothers, the interests of the sisters being protected by having the corporation retain ownership of its real estate and fixed assets which were to be leased to the partnership for a fair consideration. Pursuant to the plan above outlined the partnership was formed and the assets of petitioner, with the exception mentioned, were transferred to it for a substantial consideration, which was paid. Petitioner remained in existence, its name being changed from "John Wachtel Company" to "John Wachtel Corporation". Under its charter, as amended, it had the power to engage in the business of leasing the property which it retained. By lease, properly drawn and executed, it rented this property to the partnership, which thereafter conducted the business. The activities of the corporation were confined to owning *147 and holding its real estate and fixed assets and to collecting and receiving rent therefor. It is clear that there was a distinct line of demarcation after January 1, 1938, between the affairs of the corporation and those of the partnership. We attach no special significance to the possibility of control of the corporation by the three brothers at the time of the creation of the partnership. All of the stockholders, including the two sisters, voted in favor of the operation of the rendering business by the partnership and the lease of petitioner's fixed assets. There was no abuse of any "control" the three brothers may have had. We know of no law which prevents stockholders of a corporation from changing the operation of a business by a corporation to operation by a partnership. That is frequently done; and if the purpose is to avoid burdensome corporate taxes, it is not, by reason of that fact alone, invalid. The change was actually made as of January 1, 1938. Thereafter the partnership operated and expanded the business, carried workmen's compensation insurance on its employees, paid social security and employment compensation taxes as they became due, filed a certificate in the *148 public registry so that all might know that the business was being carried on as a partnership, was given a credit rating as such and the taxes were thereafter paid by the members upon the income realized. Under the circumstances to charge the income of the partnership to the corporation would be to disregard, rather than to give effect to the substance of the transaction. Respondent stresses certain alleged irregularities and mistakes, e.g. the erroneous filing by the corporation of its income tax returns under the name of "John Wachtel Company" and the apparent payment of a higher rent than specified in the lease. The returns, of course, should have shown the correct name. In each, however, the income was correctly reported. An obvious mistake of a scrivener should not militate unduly against a corporation acting in good faith and reporting the income actually received. The returns were filed on corporation income and excess profits tax forms and included in gross income the amounts received as rent under the lease. The partnership reported the income from the operation of the business on partnership forms and there is no evidence indicating that anyone has been prejudiced by *149 the error. The computations of the rent were made by an accountant who was informed it was the intention of the parties that petitioner should receive net three percent upon its investment in the leased property. This was the amount actually paid in each of the years. Whether the uniform interpretation placed upon the contract by the parties was tantamount to a modification of the contract or is binding upon us need not be decided. From the standpoint of the landlord a return of 3 percent upon an investment of $135,000 is not unduly high. From the standpoint of the lessee annual rental of approximately $20,000 for property being used in a business having a gross income of $85,000 or $90,000 likewise seems to be reasonable. We are therefore of the opinion that there is nothing in method of computing the rent which should cause us to hold that the whole arrangement was a sham or a bald and mischievous fiction. Respondent urges that, because petitioner declared and paid substantial dividends in 1938 and 1939 when the partnership realized a profit from its operations while it did not declare a dividend in 1940 when the operations of the partnership resulted in a loss, "the ability of *150 petitioner to pay dividends was entirely dependent upon the earnings of the alleged partnership." While the ability of petitioner to pay dividends might be affected by the failure of the partnership to pay the rentals due on the leased property, we cannot see how it would be affected where, as in 1940, a rental of $22,612.22 was paid even though the year's operations resulted in a loss to the partnership. The failure of the petitioner to declare a dividend under these circumstances does not, in our judgment, tend to prove that the partnership was without substance. So far the question has been discussed purely as one of fact, which in truth it seems to be. The cases cited by respondent are, of course, pertinent and have been considered. , dealt with a sham, which was ignored. and , involved dealings with wholly-owned corporations. In , the settlor of a short-term trust retained such substantial control over the corpus and income that the income was held to be taxable to him. *151 reiterated the view that generally a corporation will be recognized as a separate entity unless the "form is a bald and mischievous fiction." Cases involving family partnerships - especially those in which it is claimed that the husband and father has made gifts to his wife and children of the property used in the business of the partnership - furnish but slight aid in resolving the present question. The facts probably warranted respondent in putting petitioner to its proof that the partnership was real and that the only income realized by it consisted of rent of its real estate and plant. Such proof, in our judgment, has now been made. We are satisfied that the partnership was real throughout the taxable period and that petitioner correctly reported its income. We therefore respectfully decline to uphold the Commissioner's determination upon the first ground suggested by him. There remains for consideration respondent's alternative contention that, if the partnership is recognizable for Federal tax purposes, the gross income and deductions attributable to its business operations are allocable to petitioner under section 45 of the Revenue Act of 1938 and the Internal Revenue Code. *152 This section provides that in any case of two or more businesses owned or controlled by the same interests the Commissioner is authorized to allocate gross income or deductions between such businesses if he determines that such allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such businesses. The legislative history of section 45 and the power conferred therein upon the Commissioner have been discussed in a number of cases, many of which were recently cited in Seminole Flavor Co., 144, promulgated April 30, 1945. The facts in the Seminole case are quite similar to those of the instant proceeding. There, as here, stockholders of a corporation created a partnership to conduct a business related to that which the corporation was operating. The partnership thereafter carried on the business for which it was created and separate books of account were kept and maintained by it and the corporation, which clearly reflected the income of each. The Commissioner included the net profits of the partnership in the corporation's gross income under section 45. In holding that he erred we said: Actually, the principal *153 force behind all of the Commissioner's argument is that the petitioner could as well have done all the things that the partnership did and reaped all of the earnings of the related enterprises. Since petitioner could have had the earnings, the Commissioner would make it so by exercising the authority conferred by section 45. The same type of argument was made in the Koppers case, supra, which rejected the argument in language equally apt to the present contention, due allowance being made for factual differences, p. 158. The answer, however, to this argument is that petitioner did not do this. It was free to and did use its funds for its own purposes. It was under no obligation to so arrange its affairs and those of its subsidiary as to result in a maximum tax burden. On the other hand it had a clear right by such a real transaction to reduce that burden. ; ; ; ; . The quoted language is apposite here. Petitioner *154 could have reaped all of the earnings of the rendering business; but in order to have done so it must have taken the chance of loss. This, plus the necessity of securing additional capital, it desired to avoid. Its stockholders therefore decided, as they had a right to do, that the risk should be taken by a partnership and the additional capital should be supplied by its members. This plan was carried out. We are satisfied that the prospect of evading future taxes was not the prime factor prompting the change. The business had just sustained a substantial loss from its 1937 operations and was faced with competition from a much larger concern, which threatened its ability to operate at a profit. The brothers, although willing to risk their personal fortunes, were unwilling to risk bankrupting their sisters. One of them testified that the partnership operation of the business had been decided upon in order that the two sisters would be saved the possibility of losing what interest they had in the corporation and of having to contribute to an unprofitable enterprise. We doubt that in 1937, when the formation of the partnership was planned, or in January 1938, when it was created, the *155 stockholders of petitioner were able to foresee a successful conclusion in 1941 of the litigation against the competing concern for unfair competition. Nor may it be assumed that they could have foreseen that the operation would be as successful as it turned out to be. Our conclusion is that the partnership was not a device for evading income taxes. Section 45, therefore, should not be applied upon the ground that it is necessary in order to prevent evasion of taxes. The only other ground upon which the Commissioner can - and does - rely, is that an allocation is necessary in order clearly to reflect the income of two or more organizations, trades, or businesses owned or controlled, directly or indirectly, by the same interests. Assuming arguendo that the three brothers controlled both the corporation and the partnership we are still not convinced that any allocation is necessary. The Books of each organization clearly reflected its income. The partnership reported all of the income from the operation of the business conducted by it and the corporation reported all of the income which it had, viz., rent from its property. There was no attempt to shift profits from one organization *156 to the other or to build up fictitious losses from dealing with each other. In our judgment it is not necessary to make any allocation in order clearly to reflect the income of the two organizations. Respondent erred in including in petitioner's gross income the net income derived by the partnership from its operations. Uncontested adjustments make it necessary that the deficiencies be recomputed. Therefore, Decision will be entered under Rule 50.